UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERT SCHEALL, | Case No. 1:19-cv-02435 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Thomas M. Parker |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## OPINION AND ORDER

In this appeal from the administrative determination of the Social Security Administration, which denied Plaintiff's application for disability insurance benefits and supplemental security income, the Magistrate Judge issued a report and recommendation that the Court affirm the Commissioner's final decision. (ECF No. 14.) Plaintiff objects. (ECF No. 15.) For the reasons that follow, the Court **OVERRULES** Plaintiff's objections (ECF No. 15), **ADOPTS** the report and recommendation (ECF No. 14), and **AFFIRMS** the Commissioner's decision denying Plaintiff's application for disability insurance benefits and supplemental security income.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robert Scheall applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on November 30, 2016. (*See* ECF No. 10, PageID #70.) According to Plaintiff, he became

1

disabled on September 29, 2016. (*Id.*, PageID #426.) Plaintiff claimed that he was disabled due to a number of physical and mental health conditions, including depression, anxiety, chronic diarrhea, lumbar degenerative disc disease, degenerative joint disease, diabetes, sleep apnea, hypogonadism, hypothyroidism, and obesity. (*Id.*, PageID #453.)

Mr. Scheall's claims were denied initially on April 11, 2017, and upon reconsideration on June 12, 2017. (*Id.*, PageID #70.) Mr. Scheall requested an administrative hearing, which an administrative law judge conducted on July 11, 2018. (*Id.*) The ALJ denied the claim in a decision dated September 12, 2018. (*Id.*, PageID #85.) When the appeals counsel denied review on August 26, 2019, the ALJ's determination became the final decision of the Commissioner. (*Id.*) Plaintiff then filed a complaint in federal court to obtain judicial review of the final decision on October 18, 2019. (ECF No. 1.)

### A. The Initial Application

Before this case, Mr. Scheall filed an application in 2014 for disability benefits for a period beginning October 1, 2013. (ECF No. 10, PageID #267.) The claim was initially denied on April 10, 2015 and again on reconsideration on June 4, 2015. (*Id.*) Mr. Scheall requested a hearing, which occurred on June 3, 2016 and at which he testified. (*Id.*) In that application, the administrative law judge found that Mr. Scheall suffered from "obesity, diabetes, severe obstructive sleep apnea syndrome, lumbar displaced disc without myelopathy, mild to moderate degenerative joint disease of the bilateral hips and major depression." (*Id.*, PageID #269.) Despite

2

this finding, the ALJ denied Mr. Scheall's application on September 28, 2016. (*Id.*, PageID #279.)

### B. The Subsequent ALJ Determination

After the denial of Mr. Scheall's initial application, he submitted a subsequent application on November 30, 2016. (*Id.*, PageID #70.) When the claims were denied initially and on reconsideration, Mr. Scheall requested a hearing. (*Id.*) After the administrative hearing on July 11, 2018, the ALJ also made the determination that Mr. Scheall was not entitled to supplemental security income or disability benefits.

In his decision, dated September 12, 2018, the ALJ made the following findings of fact with respect to Mr. Scheall's medical history:

#### B.1. Physical Health

On September 16, 2015, Mr. Scheall underwent a colonoscopy. (*Id.*, PageID #73.) The colonoscopy revealed two polyps and mild diverticulosis in his colon. (*Id.*, PageID #521.) On October 17, 2016, Mr. Scheall canceled an appointment with Dr. Sandra Berglund, his primary care physician, because of diarrhea. (*Id.*, PageID #541.) On October 24, 2016, Mr. Scheall attended a rescheduled appointment with Dr. Berglund, where the doctor documented a report of elbow pain and increased anxiety after Mr. Scheall fell down a flight of stairs. (*Id.*) In a follow-up appointment on December 20, 2016, Mr. Scheall reported knee pain and muscle spasms. (*Id.*, PageID #540.) At the same appointment, he requested physical therapy. (*Id.*)

On January 16, 2017, Mr. Scheall attended an appointment for physical therapy. (*Id.*, PageID #517.) His physical therapist, Nicole Scherry, noted that

3

Mr. Scheall reported lower back and knee pain that began four or five years earlier. (*Id.*) He also reported that a fall in 2016 worsened the pain. (*Id.*) Mr. Scheall told Scherry that he tried injections and physical therapy to manage the pain, but that those methods did not work. (*Id.*) Mr. Scheall was discharged from physical therapy on May 15, 2017, at which point physical therapist Steven Gay gave Mr. Scheall a poor prognosis, noting that his treatment goals had been abandoned because of noncompliance. (*Id.*, PageID #654.)

On January 31, 2017, Mr. Scheall saw Dr. Edmond Blades to treat his diarrhea. (*Id.*, PageID #545.) Dr. Blades had treated Mr. Scheall nine years earlier for the same problem. (*Id.*) In his earlier treatment, Dr. Blades did not find a cause for the condition other than Mr. Scheall's "significant psychosocial and psychiatric problems." (*Id.*) On the January 31, 2017 visit, Dr. Blades opined that Mr. Scheall could have a possible obstipation and scheduled further testing and diagnostic procedures. (*Id.*, PageID #547.) Dr. Blades conducted a colonoscopy on May 12, 2017, finding nothing abnormal other than mild diverticulosis. (*Id.*, PageID #660.) Mr. Scheall attended a follow-up appointment with Dr. Blades on August 22, 2017. (*Id.*, PageID #745.) Dr. Blades concluded that the cause of the diarrhea was still undetermined and noted that 15 years earlier Mr. Scheall had been diagnosed with stress-induced diarrhea. (*Id.*) After that appointment, Dr. Blades was still unsure whether Mr. Scheall's diarrhea was "organic or psychologic" and ordered further testing. (*Id.*, PageID #746.)

4

On April 20, 2017, Mr. Scheall saw Dr. Kenneth Grimm, who diagnosed him with lumbosacral pain, agoraphobia, depression, anxiety, morbid obesity, diabetes, and hypothyroidism. (*Id.*, PageID #844.) Dr. Grimm ordered an MRI for Mr. Scheall, which took place on May 31, 2017. (*Id.*, PageID #849–50.) Dr. Doksu Moon reported that the MRI showed that Mr. Scheall's spinal spaces "appeared patent," but that there were mild hypertrophic changes to certain joints. (*Id.*) At a follow-up appointment on June 14, 2017, Dr. Grimm ordered injections into the affected joints. (*Id.*, PageID #852.) After the injection on July 18, 2017, Mr. Scheall reported a 70% improvement in pain for four days, followed by a return to the previous level of pain. (*Id.*, PageID #856.) Dr. Grimm then diagnosed Mr. Scheall with low back pain due to mechanical-lumbar facet syndrome-myofascial on August 10, 2017. (*Id.*) On September 29 and December 12, 2017, Dr. Grimm performed an ablation on Mr. Scheall. (*Id.*, PageID #876 & 878.) On January 17, 2018, Dr. Grimm reported that Mr. Scheall had not seen any improvement from the procedure. (*Id.*, PageID #863.) Dr. Grimm then referred Mr. Scheall to a rehabilitation program for chronic pain. (*Id.*, PageID #866.)

### B.2. Mental Health

Between February 16, 2017 and March 27, 2018, Mr. Scheall attended 16 counseling sessions with Cynthia Toncler. (*Id.*, PageID #688–718, 794–834, 895–904 (notes from counseling sessions).) He reported a number of mental health issues during this time. (*Id.*) Mr. Scheall also reported experiencing anxiety in response to family-related and financial stressors and due to fear of having an accident from his

5

diarrhea outside of his home. (*Id.*, PageID #694 & 804.) He also reported PTSD, nightmares, and anger due to abuse he suffered as a child. (*Id.*, PageID #696.) Mr. Scheall told Toncler that he had depression that caused suicidal thoughts every day and that he had attempted to commit suicide twice in the year before he started seeing Toncler and once in June 2017. (*Id.*, PageID #694, 700 & 794.)

Over the course of his treatment with Toncler, Mr. Scheall missed multiple appointments because he feared having an accident because of his diarrhea. (*Id.*, PageID #809 & 829.)

Toncler reported that Mr. Scheall's affect was at times "agitated or incongruent" (*id.*, PageID #702), and at other times "congruent or appropriate" (*id.*, PageID #706). Toncler also reported that Mr. Scheall was preoccupied with his physical ailments, irritable, and refusing help, but not suicidal at the time of the appointments. (*Id.*, PageID #719–21.) Though Mr. Scheall exhibited focused concentration at a few appointments, Toncler reported that his concentration was usually preoccupied. (*Id.*)

Mr. Scheall spoke frequently with Toncler about his physical health and told her that he was being treated for chronic diarrhea that was exacerbated by stress. (*Id.*, PageID #954.) Mr. Scheall reported frustration that his doctors had not found the cause of his diarrhea and told Toncler that he could not do certain activities because of his fear of an accident, such as pool physical therapy for his knee and back pain. (*Id.*, PageID #694, 714, & 814.) Mr. Scheall also told Toncler that he would not wear adult diapers out of pride. (*Id.*, PageID #714.) Dr. Thomas Thysseril, who

6

prescribed medication for his depression, also noted that Mr. Scheall was at times "somatically preoccupied" with his diarrhea and other physical health problems. (*Id.*, PageID #719.)

Mr. Scheall and Toncler also frequently discussed Mr. Scheall's reported suicidal thoughts and past suicide attempts. (*Id.*, PageID #700, 794, & 799.) On two different occasions, Mr. Scheall told Toncler that he thought about suicide every day. (*Id.*, PageID #694 & 700.) On June 29, 2017, Mr. Scheall also reported having attempted suicide days earlier by placing a garbage bag over his head. (*Id.*, PageID #794.)

### B.3. Relevant Opinion Evidence

Multiple medical professionals provided opinion evidence relevant to Plaintiff's case.

First, Dr. Deborah Koricke evaluated Mr. Scheall's mental capacity on March 3, 2015, on referral from the Opportunities for Ohioans with Disabilities Division of Disability Services. (*Id.*, PageID #499.) In Dr. Koricke's opinion, although Mr. Scheall had adequate memory and average intelligence, he had "some difficulty" understanding complex instructions because of his depression and attention lapses. (*Id.*, PageID #505–06.) Dr. Koricke also opined that Mr. Scheall's depression would cause him to work at a slow pace, it would be difficult for him to respond appropriately to supervision and coworkers, and work pressures could worsen his depression. (*Id.*)

Second, Dr. Charles Misja evaluated Mr. Scheall's mental capacity on March 10, 2017, also on referral from the Ohioans with Disabilities Division of Disability

7

Services. (*Id.*, PageID #608.) Dr. Misja opined that Mr. Scheall is capable of understanding and executing ordinary instructions. (*Id.*, PageID #614.) Also, differing from Dr. Koricke, Dr. Misja opined that Mr. Scheall would have only minimal limitations with respect to attention, concentration, pace, appropriate response to supervision and coworkers, and appropriate response to work pressures. (*Id.*)

Third, Dr. Freeland Ackley evaluated Mr. Scheall's physical capacity on referral from the Ohioans with Disabilities Division of Disability Services on March 18, 2017. (*Id.*, PageID #624.) Dr. Ackley reported that Mr. Scheall had normal memory, concentration, range of motion, coordination, gait, and strength. (*Id.*, PageID #628.) Dr. Ackley opined that Mr. Scheall was able to perform everyday activities without any difficulty. (*Id.*)

Fourth, Toncler, Mr. Scheall's counselor, provided a "mental impairment questionnaire" on February 8, 2018. (*Id.*, PageID #836–39.) Toncler noted that, by that point, she had not seen Mr. Scheall in two years. (*Id.*, PageID #837.) In Toncler's opinion, Mr. Scheall did not have reduced intellectual functioning. (*Id.*) Toncler opined that Mr. Scheall had "moderate" limitations in interpersonal interaction, but that he had "none-mild" limitations otherwise. (*Id.*)

Finally, four state agency consultants evaluated Mr. Scheall. Dr. Kristen Haskins evaluated Scheall's mental capacity on March 17, 2017. (*Id.*, PageID #299.) She adopted the residual functional capacity that Mr. Scheall was assigned in September 2016. (*Id.*) On June 7, 2017, Dr. Robyn Murry-Hoffman concurred with

8

Dr. Haskins's opinion. (*Id.*, PageID #335.) On April 3, 2017, Dr. Teresita Cruz evaluated Mr. Scheall's physical capacity. (*Id.*, PageID #297–98.) Dr. Cruz also adopted the September 2016 determination of residual functional capacity. (*Id.*, PageID #297.) On June 11, 2017, Dr. Leslie Green evaluated Mr. Scheall and concurred with Dr. Cruz's opinion. (*Id.*, PageID #334.)

### C. Testimonial Evidence

Mr. Scheall testified at the hearing before the administrative law judge. (*Id.*, PageID #223–53.) He stated that he was capable of doing simple household chores, such as folding laundry, doing dishes, vacuuming, and mowing the lawn and that he spent his days doing these chores. (*Id.*, PageID #229.) However, Mr. Scheall also testified that moving to do these chores was painful and that he needed to take frequent breaks while doing them. (*Id.*) Mr. Scheall testified that his chronic diarrhea was his main obstacle to employment. (*Id.*, PageID #228.)

Daniel Samoni, a vocational expert, also testified at the hearing. (*Id.*, PageID #253–59.) Samoni answered several hypothetical questions from the ALJ and ultimately opined that the hypothetical individual the ALJ described could work as an inspector and hand packager, a cafeteria attendant, or a housekeeping cleaner. (*Id.*, PageID #256.) According to Samoni, there are 91,000 such jobs in the national economy, meaning that, in Samoni's opinion, there are jobs that Mr. Scheall could perform. (*Id.*) However, Samoni conceded that the hypothetical individual could not perform the work that Mr. Scheall did before the alleged onset of his disability. (*Id.*, PageID #257.)

**D. The ALJ's Decision**

In a decision dated September 12, 2018, the ALJ determined that Mr. Scheall was not disabled on the date of the alleged onset (September 29, 2016) and still was not disabled. (ECF No. 10, PageID #70–85.) The ALJ found that Mr. Scheall had multiple severe impairments, including diabetes, lumbar displaced disc without myelopathy, mild to moderate degenerative joint disease, sleep apnea, obesity, hypothyroidism, hyperlipidemia, depression, anxiety, and PTSD. (*Id.*, PageID #73.) Also, the ALJ determined that Mr. Scheall's diverticulosis was a non-severe impairment. (*Id.*) Accordingly, the ALJ determined that Mr. Scheall did not have an impairment or combination of impairments sufficient to meet the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Based on these determinations, the ALJ decided that Mr. Scheall had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some minor exceptions. (*Id.*, PageID #76.) Conceding that Mr. Scheall could no longer perform his past relevant work, the ALJ found that he could perform jobs that exist in significant numbers in the national economy. (*Id.*, PageID #83–84.)

In making this decision, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*, PageID #76.) The ALJ also gave great weight to the opinions of Drs. Haskins, Murry-Hoffman, Misja, Cruz, Green, and Ackley. (*Id.*, PageID #81–82.) The ALJ gave partial weight to Toncler's opinion. (*Id.*,

10

PageID #82.) However, res judicata precluded the ALJ from giving weight to Dr. Koricke's opinion because her examination formed part of the basis for the first decision denying Mr. Scheall's claims in 2016. (*Id.*, PageID #83.) The ALJ also relied on the testimony of Simone to determine what work Mr. Scheall was capable of performing. (*Id.*, PageID #84.)

### E. The Report and Recommendation

In challenging the Commissioner's final decision, Plaintiff maintains that substantial evidence does not support the ALJ's conclusion that Mr. Scheall can perform light work. (ECF No. 11, PageID #919.) According to Plaintiff, because the ALJ found that Plaintiff was suffering from severe impairments that he was not suffering from at his first administrative hearing, there was sufficient evidence for the ALJ to assign Plaintiff a different residual functional capacity. (*Id.*, PageID #920–21.) Plaintiff also argues that the ALJ did not adequately explain why this new evidence did not change Plaintiff's residual functional capacity. (*Id.*, PageID #921.)

### E.1. The R&R and Substantial Evidence

In the report and recommendation, the Magistrate Judge determined that the ALJ (1) applied the proper legal standards in determining Plaintiff's residual functional capacity, (2) provided a sufficient rationale to draw an accurate and logical bridge between the evidence and his conclusion, and (3) reached a conclusion supported by substantial evidence. (ECF No. 14, PageID #970–74.)

*First*, the Magistrate Judge explains that the ALJ applied the proper legal standards throughout his analysis, complying with the applicable regulations,

11

exhaustively reviewing the new and previously existing evidence, and appropriately applying the five-step test. (*Id.*, PageID #970–72.)

*Second*, the Magistrate Judge opines that, despite Plaintiff's unforeseeable yet understandable confusion, the ALJ drew an accurate and logical bridge between the evidence and his conclusion. (*Id.*, PageID #971–72.) The Magistrate Judge reasons that the ALJ probably could not have explained his conclusion more clearly unless he had somehow foreseen Plaintiff's unforeseeable confusion about parts of the analysis, meaning that the ALJ sufficiently explained his reasoning. (*Id.*, PageID #972.)

*Third*, the Magistrate Judge explains that substantial evidence supports the ALJ's conclusion, even though the evidence could have supported an alternative conclusion as well. (*Id.*, PageID #972–74.) In this regard,, the Magistrate Judge explains that substantial evidence supported the ALJ's finding of residual functional capacity and identifies the pieces of substantial evidence. (*Id.*, PageID #973.)

### E.2. Objection

Plaintiff makes a single objection to the report and recommendation, arguing that the Magistrate Judge did not evaluate the reasoning behind the ALJ's decision, which would show that substantial evidence does not support the Commissioner's determination. (ECF No. 15, PageID #976–77.) According to Plaintiff, "the prior ALJ's rationale for arriving at his RFC ought to have been addressed, not just the finding *per se*." (*Id.*, PageID #977.) Because new and additional evidence was introduced, Plaintiff argues, the ALJ could have reached a different conclusion regarding residual functional capacity. (*Id.*) Therefore, Plaintiff argues that the

12

ALJ's failure to reach a different conclusion defeats the goal of consistent decision making. (*Id.*)

## ANALYSIS

The Court reviews de novo the portions of a Magistrate Judge's report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). "De novo review requires the Court to re-examine the relevant evidence a magistrate judge reviewed to determine whether to accept, reject, or modify the report and recommendation." *Scott v. Saul*, No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at *12–13 (N.D. Ohio May 14, 2021); *see* 28 U.S.C. 636(b).

When a party objects, review is limited to determining whether substantial evidence in the record supports the Commissioner's decision and to reviewing any legal errors. *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th Cir. 2003). "Substantial evidence" is more than a scintilla, but less than a preponderance. *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

Plaintiff's argument in support of his objections suffers from three fatal flaws, which the Court addresses in turn.

I.

The Magistrate Judge may *only* evaluate whether the ALJ's decision was supported by substantial evidence and whether the ALJ applied the proper legal standards. *Rogers*, 486 F.3d at 241. The Magistrate Judge properly evaluated the ALJ's decision and provided detailed analysis of each. ([ECF No. 14](), PageID #970–74.)

With respect to the issue of substantial evidence, the Magistrate Judge identifies five different pieces of record evidence that support the ALJ's conclusion. (*Id.*, PageID #973.) Also, the Magistrate Judge notes that Plaintiff is correct in arguing that the additional evidence could have supported an alternative finding of a more limited residual functional capacity. But the Magistrate Judge goes on to explain that the Court is required to uphold the Commissioner's decision because it is supported by substantial evidence. (*Id.*, PageID #973–74.)

As for the proper legal standards, the Magistrate Judge provides an in-depth explanation of the ALJ's application of the proper standards. (*Id.*, PageID #969–72.) Further, the Magistrate Judge concedes that Plaintiff's confusion about the ALJ's conclusion is understandable, but proceeds to explain that the ALJ nonetheless applied the proper legal standard. (*Id.*, PageID #971–72.) Having addressed these two issues, the Magistrate Judge could not have gone further analysis under the governing law.

II.

Plaintiff's argument that the ALJ determination defeats the goal of consistent decision making has no merit. An ALJ must provide a fresh review of a claim, but

14

may still "consider what an earlier judge did if for no reason other than to strive for consistent decision making." *Earley v. Commissioner of Soc. Sec.*, 893 F.3d 929, 934 (6th Cir. 2018). In other words, one ALJ may take another ALJ's previous decision into account with the goal of applying the law consistently—it does not mean that the ALJ *must* reach a different conclusion whenever there is new and material evidence. *See, e.g.*, *Piercy v. Commissioner of Soc. Sec.*, No. 5:18-cv-2214, 2019 U.S. Dist. LEXIS 198499, at *32–33 (N.D. Ohio 2019); *Brown v. Commissioner of Soc. Sec.*, No. 1:18-cv-1272, 2019 U.S. Dist. LEXIS 158403, at *17 (N.D. Ohio 2019); *Lester v. Commissioner of Soc. Sec.*, No. 1:17-cv-1937, 2018 U.S. Dist. LEXIS 165293, at *21–24 (N.D. Ohio 2018). Because an ALJ is not required to reach a different conclusion just because there is new and material evidence, and because the record shows the ALJ fairly considered the new and material evidence (ECF No. 10, PageID #76–83), Plaintiff's concerns regarding the goal of consistent decision making are misplaced.

### III.

Finally, Plaintiff's argues that the Magistrate Judge incorrectly determined the ALJ sufficiently explained his rationale for Plaintiff's residual functional capacity. This claim lacks merit. The Court may uphold the Commissioner's decision as long as the ALJ's reasoning builds an accurate and logical bridge between the evidence and the conclusion. *Fleischer*, 774 F. Supp. 2d at 877. As the Magistrate Judge explains in the report and recommendation, the ALJ provided an adequate explanation of his rationale regarding each step of the five-step test. (ECF No. 14, PageID #972.) It is not difficult to see how the Magistrate Judge reaches that

conclusion. The ALJ addresses Step 1 briefly, but sufficiently given the noncontroversial nature of that step. ([ECF No. 10](), PageID #73.)

In Step 2, the ALJ addresses Plaintiff's severe and non-severe impairments, including an explanation of why Plaintiff's non-severe impairments are classified as such. (*Id.*) There does not seem to be any controversy regarding these classifications. For Step 3, the ALJ explains that Plaintiff does not have an impairment or combination of impairments sufficient to meet the requirements of the applicable regulations. (*Id.*, PageID #73–76.) Although the requirements under the regulations are clear and although the ALJ must adhere to them, the ALJ still provides a sufficiently detailed explanation of his conclusion with respect to Step 3. (*Id.*)

Plaintiff primarily aims at Step 4, in which the ALJ must determine a claimant's residual functional capacity. While it is true that the ALJ does not thoroughly analyze the prior ALJ's conclusion in his explanation, he does provide an eight-page explanation for his conclusion. (*Id.*, PageID #76–83.) In this lengthy explanation, the ALJ succeeds in building an accurate and logical bridge between the evidence and his conclusion. Finally, in Step 5, the ALJ explains that Plaintiff is considered capable of performing light work and how he reached that conclusion. (*Id.*, PageID #84–85.) The ALJ explains that he reached this conclusion based largely on the testimony of the vocational expert, providing a sufficient evidentiary basis for his conclusion. (*Id.*) As the Magistrate Judge concludes, this is enough to build the required accurate and logical bridge between the evidence and the conclusion.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's Objections (ECF No. 15), **ADOPTS** the Magistrate Judge's report and recommendation (ECF No. 14), and **AFFIRMS** the Commissioner's decision denying the Plaintiff's request for benefits. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED**.

Dated: July 20, 2021

                                      J. Philip Calabrese
                                      United States District Judge
                                      Northern District of Ohio